# Third District Court of Appeal

## State of Florida

Opinion filed February 23, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2495
Lower Tribunal No. F18-6687C

_____


**Roberto Isaac,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.


Thomas Butler, P.A., and Thomas J. Butler, for appellant.

Ashley Moody, Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.


Before EMAS, SCALES and HENDON, JJ.

SCALES, J.

Roberto Isaac appeals his convictions and sentences for second degree murder, kidnapping and conspiracy to commit kidnapping or murder, or both, claiming that the trial court should have granted any or all of the relief sought in Isaac's post-trial Joint Omnibus Motion for Judgment of Acquittal, Motion for a New Trial, and Motion for Arrest of Judgment. ("Omnibus Motion").[1] For the following reasons, we affirm.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

On June 1, 2011, Camilo Salazar ("the victim") was kidnapped and killed. The victim was abducted in public, bound by his hands and feet, and put in the cab of a pickup truck. The victim was eventually transferred to a different vehicle and driven to a deserted area where he was brutally beaten, had his throat slit, and was set on fire from the waist down. The medical examiner confirmed that the multiple injuries sustained by the victim caused his death and that the manner of death was homicide.

By Amended Information, the State charged Isaac and others with second degree murder with a weapon, kidnapping and conspiracy to commit

---

[1] Isaac was tried below with an alleged co-conspirator, Alexis Vila Perdomo, who joined Isaac in the Omnibus Motion.

kidnapping or murder, or both. Following a jury trial, Isaac was convicted of kidnapping and conspiracy as charged, and of second degree murder.[2]

Thereafter, Isaac filed his Omnibus Motion. Prior to sentencing, the trial court conducted a hearing on the Omnibus Motion and denied every aspect of it therein, except for the motion for new trial. The trial court denied the motion for new trial via a subsequent written order.

The trial court sentenced Isaac to life imprisonment for the second degree murder and kidnapping convictions and to fifteen years in prison for the conspiracy conviction, all to run concurrently and with credit for time served. Isaac timely appealed his convictions and sentences.

## II.    ANALYSIS

In this appeal, as below, Isaac argues that he is entitled to relief for any or all of the reasons set forth in his Omnibus Motion. We disagree and address each aspect of the Omnibus Motion in turn.

### A. The Motion for Judgment of Acquittal

"A motion for judgment of acquittal is reviewed de novo to determine whether the evidence is legally sufficient to support the jury's verdict." Jefferson v. State, 243 So. 3d 1014, 1017 (Fla. 3d DCA 2018). "In moving

---

[2] The jury found that Isaac did not carry, use, display or threaten to use a weapon in the course of committing the murder.

for a judgment of acquittal, a defendant admits all facts and evidence adduced at trial, and all reasonable inferences that may be drawn from such evidence must be viewed in a light most favorable to the State." Id. "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002); see also Holmes v. State, 320 So. 3d 337, 341 (Fla. 3d DCA 2021) ("If there is substantial, competent evidence to support the jury's verdict, the appellate court must affirm.").

In his motion for judgment of acquittal, Isaac argued that the State failed to present competent, substantial evidence below to support any of the charges against him. The trial court disagreed and, on *de novo* review, so do we.

As to the kidnapping charge, the State presented the testimony of Ariel Gandulla Sarria ("Gandulla"), an individual charged with the same crimes as Isaac, but who entered into a plea deal with the State in return for his trial testimony. Gandulla testified that he was with Isaac when he witnessed Isaac abduct the victim, place the victim in plastic handcuffs, and put the victim in the cab of Isaac's rented pickup truck. After the victim was confined within the truck, Isaac told Gandulla that the victim was going to "get a beat-down."

4

Isaac eventually transferred the victim to the backseat of the car of another co-conspirator, Manuel Marin. Gandulla drove off in Isaac's rented pickup truck, leaving Isaac with Marin and the captive victim. We conclude that this direct testimony from Gandulla constitutes competent, substantial evidence to support the kidnapping conviction. See § 787.01(1)(a)3., Fla. Stat. (2011) (defining "kidnapping" as "forcibly . . . confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to . . . [i]nflict bodily harm upon or to terrorize the victim").

As to the conspiracy charge, we conclude that Gandulla's trial testimony, reinforced by the cellphone records of Isaac, Gandulla and the other charged co-conspirators, as well as other exhibits and testimony presented at trial, constitute competent, substantial evidence of an agreement to kidnap or murder the victim, or both. See § 777.04(3), Fla. Stat. (2011) ("A person who agrees, conspires, combines, or confederates with another person or persons to commit any offense commits the offense of criminal conspiracy[.]"). Indeed, this Court affirmed co-defendant Alexis Vila Perdomo's conspiracy conviction on the same evidence. See Perdomo v. State, 46 Fla. L. Weekly D2459, 2021 WL 5349371, at *1 (Fla. 3d DCA Nov. 17, 2021).

Finally, we conclude the State presented competent, substantial evidence that Isaac was a principal to the victim's second degree murder. See § 782.04(2), Fla. Stat. (2011) (defining second degree murder as "[t]he unlawful killing of a human being, when perpetrated by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual"). Gandulla testified that Isaac abducted the victim and brought the victim to Marin so that the victim would "get a beat-down." After meeting up with Marin, Isaac transferred the victim from Isaac's rented pickup truck to the back of Marin's car and stayed with Marin and the captive victim. Gandulla drove off in the truck. Isaac and Marin's cellphone data and toll records from Florida's Turnpike established that Isaac accompanied Marin to the site where the victim was beaten, stabbed and set on fire. Gasoline was used as the accelerant on the victim's body. Gandulla testified that when Isaac met up with Gandulla to retrieve Isaac's rented truck, Isaac smelled of gasoline. At this follow-up encounter, Isaac told Gandulla that the victim had "gott[en] a beating."

While Isaac claims there was no evidence introduced at trial that Isaac stabbed the victim or that Isaac knew or intended that the victim would be killed, such evidence was not required to make Isaac a principal to second

6

degree murder. "Where . . . the defendant was a willing participant in the underlying felony and the murder resulted from forces that they set in motion," the defendant is guilty as a principal for the acts physically committed by another. <u>Johnson v. State</u>, 36 So. 3d 170, 172 (Fla. 3d DCA 2010). It, therefore, does not matter if Isaac was the one who slit the victim's throat or whether Isaac knew or intended for it to happen. Moreover, the medical examiner testified that the cause of death was attributable to the knife wounds *and* the skull fractures administered during the beating of the victim. Viewing the evidence introduced below in the light most favorable to the State, Isaac willfully participated in the beating.

For these reasons, we affirm the trial court's denial of Isaac's motion for judgment of acquittal.

*B. The Motion for Arrest of Judgment*[3]

---

[3] "A motion for arrest of judgment is a postverdict motion made to prevent an entry of judgment in a criminal case after a verdict of guilty has been rendered." 15A Fla. Jur 2d Criminal Law – Procedure § 2232 (2021). Florida Rule of Criminal Procedure 3.610, the rule governing motions for arrest of judgment, provides:

The court shall grant such a motion *only* if:

(a) the indictment or information on which the defendant was tried is so defective that it will not support a judgment of conviction;

(b) the court is without jurisdiction of the cause;

7

In his post-trial motion for arrest of judgment, Isaac argued that the Amended Information's conspiracy charge[4] was defective because it alleged that Isaac had conspired to commit one or more felonies – i.e., conspiracy to commit kidnapping or murder, or both – in the same count. Because Isaac waited until the trial concluded to challenge the propriety of the charge, Isaac "is required to show not that the [information] is technically defective but that it is so fundamentally defective that it cannot support a judgment of conviction." Ford v. State, 802 So. 2d 1121, 1130 (Fla. 2001); Fla. R. Crim. P. 3.610 ("The court shall grant a motion in arrest of judgment only if . . . the indictment or information on which the defendant was tried is so defective that it will not support a judgment of conviction[.]"); DuBoise v. State, 520 So.

---

(c) the verdict is so uncertain that it does not appear therefrom that the jurors intended to convict the defendant of an offense for which the defendant could be convicted under the indictment or information; or

(d) the defendant was convicted of an offense for which the defendant could not be convicted under the indictment or information.

Fla. R. Crim. P. 3.610 (emphasis added).

[4] Section 777.04(3) of the Florida Statutes (2011) provides that "[a] person who agrees, conspires, combines, or confederates with another person or persons to commit any offense commits the offense of criminal conspiracy . . . ."

8

2d 260, 265 (Fla. 1988) (recognizing that "a charging document which is subject to pre-trial dismissal can nevertheless withstand a post-trial motion for arrest of judgment"). "An information is fundamentally defective only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy." State v. Burnette, 881 So. 2d 693, 695 (Fla. 1st DCA 2004); Fla. R. Crim. P. 3.140(o).

We conclude that the Amended Information's conspiracy charge is not fundamentally defective. As noted by the trial court, Florida Rule of Criminal Procedure 3.140(k)(5) expressly permits an information to contain alternative or disjunctive allegations.[5] It, therefore, is permissible to allege – as occurred here – that the defendant conspired to commit one or more criminal offenses in the same count of the information. See Epps v. State, 354 So. 2d 441, 442 (Fla. 1st DCA 1978) ("A single conspiracy may have for its object the violation of two or more criminal laws or two or more substantive

---

[5] The rule provides, in relevant part:

> *Alternative or Disjunctive Allegations.* For an offense that may be committed by 1 or more of several acts, or by 1 or more of several means, or with 1 or more of several intents or results, it is permissible to allege in the disjunctive or alternative such acts, means, intents, or results.

Fla. R. Crim. P. 3.140(k)(5).

offenses."); <u>Kirkpatrick v. State</u>, 412 So. 2d 903, 905 (Fla. 4th DCA 1982) ("Where a conspiracy has as its object the commission of several different crimes, proof of the conspiracy to commit any single one of the crimes charged is sufficient."); <u>Corbo v. State</u>, 347 So. 2d 133, 135 (Fla. 3d DCA 1977) (approving an information charging the defendant with conspiring to discharge a destructive device, to commit arson, to unlawfully transport explosives and to unlawfully possess explosives). "The essence of the offense [of conspiracy] is the agreement to commit a criminal act or acts, and if a single agreement exists, only one conspiracy exists even if the conspiracy has as its objectives the commission of multiple offenses; and the conspiracy continues to exist until consummated, abandoned, or otherwise terminated by some affirmative act." <u>Doolin v. State</u>, 650 So. 2d 44, 44-45 (Fla. 1st DCA 1995).[6]

For these reasons, we affirm the denial of Isaac's motion for arrest of judgment.

*C. The Motion for New Trial*

---

[6] We find inapposite this Court's decision in <u>State v. Giardino</u>, 363 So. 2d 201 (Fla. 3d DCA 1978). It suffices to say that the Amended Information's conspiracy charge against Isaac is not at all like the conspiracy indictment in <u>Giardino</u> that this Court found "mired in hopeless confusion" as to "the participants in, as well as the unlawful object and nature of the charged conspiracy." <u>Id.</u> at 203, 204.

10

In his motion for new trial, Isaac's argument was four-fold: (i) the Amended Information was fundamentally defective;[7] (ii) the trial court erred in denying Isaac's request for a special jury instruction on multiple conspiracies; (iii) the trial court erred in denying defense counsel's request that the court conduct a post-trial interview of a juror; and (iv) the State's cellphone expert was not qualified under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). We affirm the trial court's denial of Isaac's motion for new trial.

In section II. B., *supra*, this Court concluded that the Amended Information's conspiracy claim was not fundamentally defective. The trial court did not abuse its discretion in refusing to give the special jury instruction for multiple conspiracies because Isaac failed to satisfy the three-part test set forth in Stephens v. State, 787 So. 2d 747, 756 (Fla. 2001). Isaac's request that the trial court conduct a post-verdict interview of a juror was untimely under Florida Rule of Criminal Procedure 3.575; even if timely raised, the trial court did not abuse its discretion in denying the interview request. See Foster v. State, 132 So. 3d 40, 65 (Fla. 2013). At trial, Isaac did not make any contemporaneous objection to the cellphone expert's

---

[7] Isaac raised this same claim in his motion for arrest of judgment discussed, *supra*, in section II. B.

qualifications under <u>Daubert</u> or section 90.702 of the Florida Statutes; therefore, the issue was not preserved for appellate review. <u>See</u> <u>Philip Morris USA Inc. v. Gore</u>, 238 So. 3d 828, 830 (Fla. 4th DCA 2018).

## III.    CONCLUSION

Finding that Isaac is not entitled to relief on any of the grounds raised in his Omnibus Motion, we affirm the trial court's denial of Isaac's Omnibus Motion and Isaac's convictions and sentences for second degree murder, kidnapping and conspiracy to commit kidnapping or murder, or both.

Affirmed.